would otherwise perhaps come out. So my question to you is, do we have to clear the courtroom for this oral argument or not? Certainly, please. And identify yourself, please. My name is Laura Mead. I represent Donald Lambert. Mr. Lambert is prepared to proceed today without sealing the courtroom, believing that we can address the issues relevant to a determination in this case by using general terms and pointing the court to specific pages in the excerpts which are under seal without discussing the specific contents. If this court believes it's necessary to discuss specific contents of the protected documents or testimony, we would ask that for that portion of the proceedings, the courtroom be sealed. Ms. Mead, how are we to know in advance which portions are sealed and which portions are so sensitive that we shouldn't ask questions of you? Well, the best guide, I believe, is... What things we shouldn't question, shouldn't ask. Anything other than what's in the supplemental order? It's basically, I think, defined by the supplemental order. It's the contents of the note that was under seal as well as testimony regarding the note. Now, that never got published in the Fed subsecond, did it? Correct. Just that portion. Just that portion is contained in the excerpts of record, however. Basically, we're talking about the note that he passes to counsel. Correct. And testimony regarding that. And communications between Mr. Lambert and his counsel at the time he passed that note. Thank you, counsel. We'll take a brief recess and we'll... Before doing that, I assume that's agreeable to the other side? Yes, Your Honor. Paul Weiser with the Attorney General's Office representing Respondent. We had not intended to quote verbatim from Excerpt of Record 110, I believe is the page, nor any of the pages pertaining to that in the testimony in this case. And if I do feel that maybe I'm crossing that line, I'll alert the Court. Probably rely on both counsel to alert us if we're getting into the territory. Okay. Thank you. All rise. Please be seated. Let me state before you your opening argument, Mr. Weiser, that we'll look primarily to Ms. May to let us know if we're getting into dangerous territory. Otherwise, the principle of court proceedings being public is a very, very strong principle which we want to abide by if we possibly can. All right. You may proceed, Mr. Weiser. Please introduce yourself for the record again. Thank you, Your Honor. May it please the Court, my name is Paul Weiser. I am an Assistant Attorney General. Appearing with me today is John Sampson at counsel table. He is also an Assistant Attorney General, and we represent the Respondent in this matter, Mr. Blodgett. I respectfully request that the Court reverse the District Court's decision and deny Mr. Lambert's request for federal habeas relief. And I would, before I begin my argument, like to reserve five minutes for rebuttal. You may do so. But please speak closer to the microphone and speak a little louder if you would. I will do so, Your Honor. Thank you. This is a case about federalism and the proper role for federal courts in reviewing state court convictions that have been decided on their merits in the state courts. The central question in this case, of course, is were the Washington State Court's decisions so objectively unreasonable in Mr. Lambert's case, either on the facts or on the law, that Mr. Lambert is entitled to have his guilty pleas set aside? And we believe that the evidence that was before the Washington courts, as well as the legal analysis applied by the Washington courts, they were entitled to conclude, as they did, that Mr. Lambert's guilty plea was a voluntary one and that counsel provided effective assistance during the trial court proceedings in Grant County Superior Court. And we also believe that the District Court committed errors under Section 2254D, specifically Section 2254D1 and D2, as well as Section 2254E1. With respect to the District Court's error under Section 2254D1, it is clear that the District Court was applying the now-rejected clear error standard from this Court's decisions, such as Van Tran v. Lindsay and Andrade v. Attorney General of California. He also tossed in and objectively unreasonable, at least in a couple of places. I agree with you. His standard was wrong to the extent that it was clear, based on clearly erroneous standard. But he did toss in the other phrase. What do we do with that? Your Honor, I believe it was little more than merely tossing in that phrase. I don't believe that the analysis that the District Court actually applied could be considered a proper analysis under Section 2254D1. And since this Court will be conducting de novo review anyway, I believe that the error can be corrected by this Court without requiring a remand to the District Court. The other errors, though, were a little more complicated. For example, the Section 2254D2 error. If you recall in the District Court's decision, when it cited to Section 2254D2, and I'm referring to the published decision, Lambert 248, FEDSUF 2nd at 997, the District Court omitted a key phrase from Section 2254D2, and that is that the State Court's decision is to be measured in light of the evidence presented in the State Court proceeding. The District Court left off that whole phrase. And if you look at the District Court's decision, you'll see that it relies in great part upon evidence that was not submitted to the State Courts, but rather the testimony before the District Court, as well as a couple of exhibits that were submitted for the first time to the District Court, submitted for the first time in the Federal habeas phase of the case. Well, if it were okay to hold an evidentiary hearing because an evidentiary hearing was not available or denied in the State's system, then it would be okay to ignore that phrase, right? I believe so, Your Honor. If there were no hearings or no adjudications in State court, then it would be okay to ignore that phrase. So why do you think it was not okay in this case? Because, Your Honor, the claims that Mr. Lambert raised in State court, both in the Washington Court of Appeals and in the Washington Supreme Court, were clearly adjudicated on their merits. I don't know that the decision by the Chief Judge of the Court of Appeals or by the Commissioner of the Supreme Court can be characterized as anything but an adjudication on the merits. There was Federal case law that was cited by both of those courts, and the facts of the case were extensively discussed by those two courts, several page decisions that they rendered, and they clearly considered the claims that Mr. Lambert put before them. So because of that, the District Court was required to limit its review to what evidence was before the State court. Were the State court's decisions an unreasonable determination of the facts in light of the evidence that was presented in the State court? Mr. Waxman, is that true when the lower courts did not conduct, when the lower Washington courts, I'm sorry, the appellate courts in Washington did not conduct a hearing? Yes, Your Honor. I don't believe there's anything in either 2254d2 or in 2250. Under what circumstances, then, may a Federal district court conduct a hearing? I believe it's limited by the circumstances set out in section 2254e2, Your Honor, and that concerns when the evidence has not been developed in State court proceedings and it's not attributable to any fault of the petitioner. That would be the limitations on the evidence. How would we know whether the evidence hasn't been fully developed when Washington didn't conduct its own evidentiary hearings? How do we know whether the evidence has been developed or not? We have a guilty plea followed by two opinions by the Washington courts in which we did not conduct hearings. Your Honor, I would respectfully disagree. The courts did conduct hearings. There is nothing in section 2254d or in section 2254e1 that makes the State court's findings of fact presumptively correct contingent upon whether that court granted an evidentiary hearing or not. It's silent on the subject. It says nothing at all about that. Now, under previous law, under Priya Deepa law before 1996, the equivalent of what is now in section 2254e1 was spelled out in section 2254d, and it contained eight exceptions, one of them being or actually a few of them being defects or alleged defects in the State court process. Congress eliminated that in 1996, so there is no provision to determine that a State court decision is not entitled to the presumption of correctness solely because they did not conduct an evidentiary hearing in State court. It's no longer part of the equation. Now, Mr. Weiser, I understood you to say that the Washington court of appeals did conduct a hearing? It did not, Your Honor. I'm sorry, and if I did say that, I misspoke. The State court of appeals did not conduct an evidentiary hearing. It did allow the deposition of Mr. Romero. That's correct. And this is the personal restraint petition process in Washington is the petitioners, persons like Mr. Lambert, it's their opportunity to develop the record, to submit whatever declarations, affidavits, reports, other information, evidence in support of their claims. The court did grant leave to Mr. Lambert to conduct discovery and to conduct the deposition of Mr. Romero, the former defense counsel. So there was that factual development. There was not an evidentiary hearing in the sense that parties were present for a trial judge. Other than the Mr. Romero then did not appear before any judge or any panel of the Washington court of appeals. That's correct, Your Honor. He did not. Aside from the deposition of Mr. Romero, what other materials did Mr. Lambert submit to the Washington court of appeals? Well, the matters that Mr. Lambert submitted were primarily his own declarations. He had his own, I believe he submitted one in the court of appeals, and he also submitted a second one when the case entered the Washington Supreme Court. He submitted a few other declarations. These are declarations from the expert witnesses on the ethics violations? I'm sorry. I should have specified. He submitted his own declarations as well as, yes, the declarations of Ms. Bair, Mr. Iaria, who was the attorney expert, for lack of a better term, and Professor David Berner, who provided a declaration on the subject of conflict of interest. And there were other declarations. They escape my mind at this point, but I think that those were the ones that the most attention was focused upon. Obviously, the court also had access to the entire transcript of the guilty plea proceedings as well as the sentencing hearing on December 10th, 1997. The court had access to Mr. Lambert's written statement of defendant on guilty plea, which is also discussed at length in the colloquy on December 10th. Could you comment on the applicability of our recent Nunes case, N-U-N-E-S, on this issue? I'm sorry, Your Honor. I guess I confess an unfamiliarity with the Nunes decision. I don't believe I'm able to answer the Court's question. It was filed with us on December 29th, 2003 by Patricia Arthur, counsel to Mr. Lambert. Again, I apologize, Your Honor. I don't know if I can. The essence of it is when a State court refuses an evidentiary hearing, deference to a State court's factual findings is not required. Now, I suppose your argument is that, in effect, there was a hearing. Is that essentially what you're saying? Yes, Your Honor. There was a hearing. It was not what we would characterize as an evidentiary hearing in the sense that the witnesses appeared before a judge and the judge acted as a fact finder. This was a proceeding where the submissions were largely on paper, well, in fact, exclusively on paper. I'm anticipating this mate's argument that she may disagree with you. But your thought, then, is that this case would not apply. Yes, Your Honor. But the State courts had before them, in addition to those items that we've already discussed, Mr. Romero's deposition and the written statement of the defendant on guilty plea, also had the transcript of the guilty plea proceedings in Mr. Lambert's case. And based upon the evidence that was before the State courts, there could have been no other conclusion that the court could reasonably have reached other than Mr. Lambert's guilty plea was a voluntary knowing and intelligent one and that he was well aware of the sentencing consequences. If the court looks at the transcript of Mr. Lambert's guilty plea and sentencing hearing, and that's contained beginning at Excerpt of Record 119, there are several references throughout the colloquy to life without the possibility of parole. And, in fact, every reference, every single time Mr. Lambert's potential sentencing consequence in this case is discussed, it's always in terms of life without the possibility of parole. Even though the colloquy included an observation by the judge that the sentence would be the same regardless of whether he went to trial or didn't and was convicted, I get the impression from reading the district judge's published opinion that he was very influenced by the fact that there just couldn't have been any benefit to Lambert to plead guilty because the sentences would have been exactly the same. Right. Why wouldn't any sensible person take a shot? What is your response to that as to why that's either clearly erroneous or shouldn't be factored in? Your Honor, I think the district court was accurate when it stated that Mr. Lambert received the same sentence that he would have received had he gone to trial. But it was of some importance to Mr. Lambert that he not be characterized as a double murderer. Apparently that was of some significance to him. He believed he was guilty of the Mrs. Smithson's murder but did not want to be found guilty of Mr. Smithson's murder. So he was spared that to the extent that that was important to him that needs to be factored into the equation. And the fact that it was not advantageous to him, this particular sentence that he receives one life without parole as opposed to two life without parole sentences, is not really the issue of the case. The issue is his knowing, voluntary, and intelligent waiver of his right to go to trial. It's not whether it was wise, whether it was beneficial to him, just did he know what he was doing? This was his idea, Mr. Lambert's idea to plead guilty. This is not something that counsel beat him up into doing or told him that he should do. This was something that originated with Mr. Lambert. And all of them, I'm sorry, Your Honor. But it does go to the question as to whether counsel was effective here and whether Mr. Lambert really knew what he was doing. And it's one thing to recite, yes, I'm getting life without parole, but those are words that a 15-year-old might be able to recite without really understanding, without reading them literally. And doesn't Mr. Romero have an obligation to explain to him and to make sure that he understands that they really mean literally what they mean? We've given out life sentences for years in this country without people ever serving life. Right. Your Honor, just one correction. At the time of the plea, Mr. Lambert was 16 years old. But otherwise, the Court's question is a valid one. At the time Mr. Lambert pled, the note that has been brought to everyone's attention, Excerpt of Record 110, which prompted the change of plea or was one of the factors prompting the change of plea, it preceded everything that we've discussed to this point about what happened on the 10th of December, 1997. There was a break when Mr. Romero spoke with Mr. Lambert. And if you recall, there's a discussion in the sentencing or rather the guilty plea transcript that at that time counsel and Mr. Lambert went over the written statement of defendant on guilty plea word for word. And Mr. Lambert read it aloud. And I think that there are at least four or five references in that document to life without the possibility of parole. It doesn't say anything about 20 years or anything like that. But is there any place in the record where the judge says, I want you to understand that when I say life without parole, that means that you don't get, you're going to spend the rest of your days in jail and there's no possibility whatsoever that you're ever coming out. I think there are two, Your Honor. One is during the course of the colloquy with Mr. Lambert and the judge, Judge Sperlein pointed out that there was one of the spots on the written statement of defendant on guilty plea that did not pertain to Mr. Lambert's case. And that was the paragraph pertaining to community placement because, and he wanted to verify with Mr. Lambert that in fact he understood there would be no release to the community. And Mr. Lambert indicated he did. And then during the sentencing hearing, right at the time Judge Sperlein sentenced Mr. Lambert, he also said, Mr. Lambert, you are now sentenced to the remaining time of your life to imprisonment without possibility of parole or other release. My question would be, what more could Judge Sperlein be expected to do? What more could he have been expected to say? And how much clearer could it have been? According to Mr. Lambert, no matter what anybody said, he would have believed that life without parole equals something other than that. Could you address Judge Nielsen's rationale specifically? What is it precisely that he did wrong with respect to the voluntariness issue? Your Honor, I think, first of all, by disregarding and discarding completely the state court findings, that was the first error. But also there was the shift in focus. The state courts had reviewed largely the same evidence that Mr. or I'm sorry, that Judge Nielsen did in the district court proceedings. There was a shift in focus, though. The state courts looked at the objective evidence in deciding what we believe to have been an objectively reasonable decision, that Mr. Lambert knew exactly what he was doing. What Judge Nielsen did is he looked at a more subjective body of evidence. In fact, the body of evidence consisted of maybe a couple of pieces of evidence. The note that Mr. Lambert handed to counsel and the testimony surrounding the note, that was the bearing on, allegedly, Mr. Lambert's subjective understanding on the 10th of December, 1997, of what the term life without parole meant. So there was the shift in focus and the disregarding of everything that had happened in the state court proceedings that we believe was the basis for the district court's error. Counsel, you're down to about two minutes. Do you want to reserve? Yes, I do, Your Honor. Thank you. Ms. Mait. Thank you. My name is Laura Mait, together with Pat. Pull the microphone a little bit further. Further down and speak into it. How's that? Thank you. My name is Laura Mait, together with Pat Arthur at counsel table. We represent Mr. Donald Lambert. I would like to reserve two minutes for the cross-appeal at the end. I think you better work it into your entire presentation. Okay. This is not a case where a person pled guilty and now regrets it. It's a case where 16-year-old Donald Lambert, who had completed only the eighth grade, had a lawyer who did not plan to begin investigating the state's witnesses until after they actually testified. It's a case where the lawyer did not hire an investigator. With his decision to plead guilty, given his confession that he had done everything that was necessary in order to convict him of aggravated murder. At the point that Donald entered the plea, Mr. Romero's failures to that point to provide competent counsel played a role in his failure to give Mr. Lambert any advice at the time of the plea about whether this was a good decision, an intelligent decision. I'm assuming that Mr. Romero failed to do everything that you said he failed to do. Failed to hire an investigator, failed to investigate co-defendants for impeachment purposes, failed to give advice, maybe at all, or gave bad advice without or didn't give good advice with respect to the plea. My question still is, what difference does it make, that is, why is there prejudice, given the fact that his confession took care of every single I and T? One difference is the statement, the false admission by Donald Lambert in the transcript of his statement. Yes, that's different. But why would that be prejudicial, given the anticipated testimony of Hinckley? I think it was Hinckley. I may get it wrong. Melanie Hinckle. Hinckle. Thank you. And given the fact that Lambert returned to, went out of the house, returned, shot off a whole bunch of other shots, left, and came back to shoot at Mrs. Smithson. I mean, that's all the premeditation one needs, and it's all that you need to convict of aggravated murder for having shot in the course of or in the escape from a robbery. I think these are very different cases when, if they're approached as Mr. Romero approached it, as a case where your client has admitted to a plan, where you're dealing with a 15-year-old kid who, under Mr. Romero's interpretation, had admitted to a plan. The only thing in Mr. Lambert's statement that included such an admission was a false transcription. Mr. Romero did not know that. At the time he was advising Mr. Lambert about the plea and whether he should be entering the plea, he did not know important facts relevant to Mr. Lambert's decision. And as to prejudice in the context of a guilty plea, the inquiry is whether Mr. Lambert would have entered this plea. Had he known the consequences of the plea? Had he known possible challenges to his case? What are they to this day? What are they? I mean, to this day, including after an evidentiary hearing, whether or not it should have been held in the district court. To this day, what are they? What possible defense did he have? Well, the one that I just mentioned regarding the plan, that was relied on by the prosecutor in the opening statement. That did not exist based on Donald's statement. Ms. Hinkle's testimony has not been subject to cross-examination. In addition, when Donald Lambert was making this decision to enter the plea, he did not know that the sentence he faced as a result of entering this plea would mean that he would literally spend the rest of his life in prison. Well, now, wait a minute. He repeated it, I don't know how many times, maybe six or seven times in the course of the case. What are we to do with that? I believe, as Judge Bivey pointed out earlier, what he acknowledged in response to questions from the superior court judge was that he was receiving a sentence called life without parole. That is a confusing term, as Donald Lambert testified to a 16-year-old kid with only an eighth-grade education. He did not understand at the very end of the sentencing, there's a brief mention. It comes literally in the last paragraph, I believe, of the sentencing, indicating that it means that he will be spending the rest of his life in prison. As to the community placement provision. Are you suggesting we can ignore that somehow? I don't think it's a matter of ignoring it. I think it's a matter of comparing that with the rest of the evidence, which strongly suggests that Judge Nielsen found, supported, Mr. Lambert's testimony  that he would literally spend the rest of his life in prison. That subsumes another issue in terms of what's the proper standard to apply with respect to the state court's determination of voluntariness. There are a couple of things with the voluntariness. First, going to the factual findings by the state court, which served as the basis for a conclusion on voluntariness. No deference is due the state court's fact finding under this court's precedent in Nunes v. Mueller. There was no hearing in the state court. How did it have to be? There was an adjudication on the merits that considered every single piece of evidence, save for the error in transcription, that was before the district court on evidentiary hearing, didn't it? There are a few differences between what was before the state court and what was before the federal court. But as Nunes makes clear, what happened in Nunes was that the court, similar to the state courts here, made a determination there was no prima facie showing as to the claim. Similarly here, a single judge from the Court of Appeals dismissed Donald's petition as frivolous without referring it to a panel for a merits determination. Given that position, this case is squarely governed by Nunes, and the factual findings by that state court absent an evidentiary hearing are not entitled to deference under 2254E. Does that help the Washington Court of Appeals decision? Pay no attention to it? As to the factual findings under Nunes, I believe that's true, though I also think it's somewhat academic in this case because those factual findings also have been rebutted by clear and convincing evidence in this case. Well, isn't Nunes distinguishable as well because there there was no hearing at all, whereas here the state court did permit the deposition? I'm not sure it's clear from Nunes what evidence was before the state court. I don't think there's any – I don't recall from the opinion anything indicating there were no affidavits, just a bare pleading before the California court alleging the constitutional violations. For a state to defend its criminal judgments in a matter of habeas, thus is the Washington Court of Appeals going to have to conduct a hearing every time now in order to protect itself? I don't think so. No, I don't think there's anything about this that's – and I don't think there's anything in Nunes. What more was the Washington Court of Appeals obligated to do here? I don't think it's every case. I think in this case there was enough of a showing that a hearing was required. But we did – but the Washington Court of Appeals did allow Mr. Lambert to bring in, to submit his evidence. It did allow him to take a deposition. Was he forbidden from taking, from deposing anybody else? Yes, he was. There were two additional depositions. He requested a deposition of Mr. Tom Earl, of a secretary who was employed by Earl and Earl at the time. He also requested repeatedly an evidentiary hearing, and those requests were denied. He was not permitted an opportunity. He was denied one deposition, and that would have gone to the question of conflict between Mr. Earl and Mr. Romero. There are two depositions, one including Thomas Earl, which would have gone to the representation of his co-defendant as well. Was Mr. Romero disbarred because of his conduct in this case or for some other reason? I believe that Mr. Lambert's case played a role at the hearing for issues regarding hiring of experts and his request for funds. That was evidence that was presented at the hearing before the bar. But the focus of the bar's proceeding against him, my understanding, has to do with requests for money in cases. But not necessarily this case? There was some evidence presented at the hearing regarding this case. But not the specific claims that have been raised? Which might have included this case, but would have included some other cases as well. Correct. I just want to address also the community placement provision that Mr. Weiser referred to earlier. He used it as support for the fact that Mr. Lambert was informed he would spend the rest of his life in prison. It doesn't actually say that. There is a paragraph here called Paragraph J that applies to or relates to placement in the community after release from prison and understand that because of the sentence that's mandatory in this matter, there will be no release to community placement to a 16-year-old that does not communicate you are spending the rest of your life in prison. At the time Mr. Lambert entered the plea, just before the trial, without a judge in those circumstances, what would you have said? I believe, I would hope that counsel such as Mr. Romero would say to me We're talking about the judge and that's the focus of this appeal, that there was a proper voluntariness determination made and that Mr. Lambert was fully aware of the fact that he was going to spend the rest of his life in jail. Now, specifically, if you were handling that as the judge, what would you have said which would be different than what this judge said here? I'll get to that. Let me just give a little background on it. The claim here is that Donald's plea wasn't knowing, voluntary, and intelligent and that he was denied effective assistance of counsel. Not that anything the district court or the superior court did was wrong at the plea colloquy. I think Two separate issues. In other words, was the voluntariness hearing valid? And then, was there a IAC issue? But specifically, what should the judge have said that the judge did not say here? I think in a case such as this, Mr. Romero could have asked the judge to say I'm concerned under the circumstance of this case that my client doesn't understand the plea he's entering and the judge could have said to Mr. Lambert, your sentence in this case is mandatory. It's life without possibility of parole. That means you will never get out. And I think if you, in Miller v. Straub, which is a Sixth Circuit case, it's a similar case dealing with juveniles who entered pleas that were later found involuntary. The plea colloquy in that case, the judge actually discusses the right to appeal or doesn't discuss the right to appeal, which is the relevant issue in that case. So that case provides an example of a judge taking one additional step under the special circumstances that this case presented where there was a sudden change in the plea. The defendant met only briefly with his defense counsel and entered this plea to the most serious offense possible, so the most serious sentence possible. Is the only remedy retrial here? I believe it is. Is there any circumstance under which if this were, if the writ were to be validated, that the writ could be limited to resentencing? I think in this case where the attack is to the plea and that the plea itself wasn't knowing, voluntary, and intelligent, granted that we largely talk about the sentencing consequences, that he didn't understand the plea he was entering to the offense as well as the sentence. And I don't see how to just limit it to the sentence in this case. Let me ask you to repeat yourself. Okay. It is very, very difficult to read this record and find any possible basis upon which he didn't fully acknowledge that he understood what he was doing. I mean, I'm sure you would have to agree with that. So the only wiggle room here is a statement 10 or 12 years after the fact that subjectively I thought maybe without meant with. What's the basis for invalidating the whole thing just on that account? This is, I think, a rare case where you have what appears to be a solid plea colloquy, but it does not take an additional step in terms of spelling out for a young defendant what the sentence he's entering. But he was so with it that he even volunteered to the judge when not asked. And, yes, I have discussed all this with my lawyer. I mean, you can't read it without thinking this is a guy who knew exactly what he was doing. Or at least assume that with me and get to the heart. I mean, you thought about it a lot. Why is it that the rent should be granted just because of an after-the-fact subjective belief? I don't think it is based just on an after-the-fact subjective belief. Assuming that the plea colloquy was perfectly valid, there's tremendous evidence in this case that at the time he entered his plea he did not understand. And it's looking outside of the record. But looking outside of the record is specifically contemplated by Supreme Court law that goes back to Blackledge v. Allison, which recognizes that there are times that a plea, we can't just look to the record of what happened at the plea colloquy to determine whether this plea was knowing, voluntary, and intelligent. In this case we have a kid who at the age of 16 met with his lawyer for at the most 13 minutes to discuss this plea. He proceeded in the plea colloquy and said, this isn't new. We've been discussing a plea for a long time. And the judge said, is there any, do you have any questions for me? Do you have any more questions of your lawyer? There was never anything said, oh, wait, that's not right, or anything. And this is one of those cases, those rare cases where we are having to look outside the record of this. And we can see that based on Judge Nielsen's credibility determinations in an evidentiary hearing, that it appears Mr. Romero did not meet with Mr. Lambert as he represented to the superior court. Judge Nielsen found credible Mr. Lambert's testimony that throughout the course of his representation, he met with his lawyer less than 15 times, no more than 15 to 20 minutes per meeting, with one exception where they viewed a videotape. In addition, you have a Western State report that's based on an interview with Mr. Lambert from a month before the plea, where it's clear that he has no understanding of the possible consequences he faces as a result of pleading, going to trial. Similarly, we have the note that we've been talking around, which indicates that at the time the court took a brief recess to allow Mr. Lambert to talk to his lawyer, he did not understand what he was pleading to and the consequences of that plea. So this is one of those cases where there's significant evidence, not just the defendant's subjective understanding or subjective representation a year later, but significant evidence outside the record that supports the conclusion that his plea wasn't knowing, voluntary, and intelligent, and that he was denied effective assistance of counsel at the plea. Counsel, would you go back to the question as to the hearing before the Washington Supreme Court. I'm looking at the State's reply brief, pages three and four. They have part of a colloquy between the prosecuting attorney and Mr. Romero and counsel for Mr. Lambert during Mr. Romero's deposition, in which the counsel for Mr. Lambert asked Mr. Romero not to answer certain questions. Now, if Mr. Romero is prohibited from asking certain questions, then there is evidence that has not been placed before the Washington Court of Appeals. How can we fault the Washington Court of Appeals then for not conducting a more thorough hearing when one of the principal witnesses, Mr. Romero, has been asked not to testify? There are a couple of things I'd like to say about that. First, it's clear from Mr. Romero's deposition that he was deciding not to testify. He testified at the end of his deposition based on his own understanding of his ethical obligations. In addition, in this case, the State never made a ---- But counsel for Mr. Lambert could have waived all of that, right? And presumably by deposing Mr. Romero, Mr. Lambert was asking Mr. Romero to disclose any conversations that they had had. But then at certain points, counsel for Mr. Lambert asked Mr. Romero not to testify to certain things, even though the cross-examining attorney for the State says, wait a minute, I thought the privilege was waived. I think what the deposition shows is that the counsel for Mr. Lambert was concerned about, in the process of Mr. Lambert pursuing his Sixth Amendment rights, waiving his Fifth Amendment rights and having to give up one to pursue the other. The other thing, just briefly to mention, is that the State never at any point during the State court proceedings moved to depose Mr. Romero, never asked for an order directing Mr. Romero to answer, clarifying what had and hadn't been waived. There was no pursuit that way, in which case Mr. Lambert could have requested a protective order. And I think I'm out of time, unless you have any further questions. Thank you, counsel. Thank you very much. Mr. Weisser, you have a little bit of time left. Thank you. There's been some discussion about Mr. Lambert's note, again, Excerpt of Record 110. There were a couple of other notes, though, that have a bearing on Mr. Lambert's subjective knowledge of what the sentence was that he faced during the same time frame, not years later, not during the summer of 2002 when he's testifying before a federal judge, but back in 1997. First, there's Excerpt of Record 95, the letter that Mr. Lambert wrote to Mr. Nodell. This was before trial, before the case was going to be heard in December. He objected that he wanted the death penalty because he didn't want to go away to prison for the rest of his life. He didn't want to rot in a prison cell. He would prefer to get a death sentence. In December of 1997, shortly after Mr. Lambert was found guilty, shortly after his guilty plea, and it was in December, it wasn't months later, it was within two weeks because it was received by December 24th of 1997, the taunting letter that Mr. Lambert wrote to Mr. Nodell where he said, Mr. Nodell, who is the prosecutor for Grant County, Mr. Nodell, you can look in the mirror and smile and be happy to know that you sent a 16-year-old kid to prison for the rest of his life. Not 20 years, not life and I'll be eligible for parole sometime in the near future, nothing like that. For the rest of my life. That literally, that is what those words say, but of course he did draw a life sentence, but might nevertheless have thought that there was a possibility of parole, but that wouldn't be incorrect for somebody who had a possibility of parole to say I'm under a life sentence. I've been sentenced for the rest of my life unless the parole board grants me parole. I'm not sure that that demonstrates as much as the state would like it to demonstrate. I think, Your Honor, when Mr. Lambert states that he knows that he's being sent to prison for the rest of his life, that he understands that it's going to be the remainder of his years on earth, that he will not walk a free man, that he will always be within prison. I think even a 16-year-old understands that and frankly we're infantilizing Mr. Lambert by assuming that he had such an unsophisticated understanding of the criminal justice system. He was a veteran of this system. He was, at the time that he was arrested in connection with the Smithson murders, he had been released on a charge of resisting arrest. He was also required to register as a sex offender because of a prior sex offense that he had been involved in. So he was familiar with the criminal justice system. Plus, at the time he pled guilty on December 10, 1997, he wasn't cowed by being in the presence of a judge or attorneys and sheepish and unwilling to talk to the court or express any confusion that he may have had. He had been in court for seven days on that case at that point because jury selection had proceeded beginning on December 3. Thank you, Counselor. Your time has expired. Thank you very much, Your Honor. The case just argued will be submitted for decision and the court will adjourn. All rise. This court for discussion stands adjourned.
judges: O'scannlain, Rymer, Bybee